**ADA DAIRY PRODUCTS CO., Inc. v. SUPERIOR COURT, SEMINOLE COUNTY et al.**

No. 35885.

Supreme Court of Oklahoma.

June 16, 1953.

Rehearing Denied June 30, 1953.

Kerr, Lambert, Conn & Roberts, Ada, for petitioner.

Bishop & Driscoll, Seminole, for respondents.

O'NEAL, Justice.

The question here posed is whether the service of summons upon Harvey J. Lambert, President of Ada Dairy Products Company, Inc., in an action, wherein Charles F. Coody is plaintiff and Ada Dairy Products Company, Inc. is defendant, filed and pending in the Superior Court of Seminole County, Oklahoma, is valid, thereby giving the court jurisdiction of the parties and the subject-matter of the action.

On the 6th day of August, 1952, Charles F. Coody, a resident of Ada, in Pontotoc County, Oklahoma, filed an action in the Superior Court of Seminole County, Oklahoma, against the Ada Dairy Products Company, Inc., a domestic corporation engaged in the business of processing dairy products in the city of Ada, in Pontotoc County, Oklahoma, to recover a judgment in the sum of $42,900 damages for a personal injury received on April 3, 1952 at defendant's plant.

It was admitted in oral argument that plaintiff, Charles F. Coody, was, prior and subsequent to the filing of the action, a resident of Pontotoc County; that the cause of action arose solely in said county; that defendant was a domestic corporation with its principal place of business in said county, and that defendant's officers, including its President, Harvey J. Lambert, all resided in said county.

It is further disclosed by the transcript of the record that Mr. Lambert, President of the defendant company, was engaged in the practice of law and that in his capacity as an attorney, and for no other purpose, he went to Seminole, Oklahoma on the morning of August 8, 1952, to represent his client in a matter previously assigned for hearing by the court in the case of Jane Perry v. Casualty Reciprocal Exchange, et al., pending in the Superior Court of Seminole County. As Lambert arrived at the courthouse at approximately 10 o'clock on the morning of August 8, 1952, a deputy sheriff of Seminole County, served a summons on Lambert as the President or Service Agent of the defendant in the case of Charles F. Coody v. Ada Dairy Products Company, Inc. After Mr. Lambert's appearance as counsel for the defendant in the Jane Perry v. Casualty Reciprocal Exchange case, he immediately returned to his home in Ada, Oklahoma. The summons served upon Mr. Lambert, as service agent of the Ada Dairy Products Company, Inc., required it to answer on or before the 5th day of September, 1952.

Prior to the answer date, and on August 11, 1952, the Ada Dairy Products Company,

Inc., served notice upon Charles F. Coody and his counsel that it would take depositions of sundry witnesses, including that of Mr. Coody, in the city of Ada, Oklahoma in Pontotoc County, on August 13, 1952. Upon receipt of said notice, counsel for Mr. Coody filed an application to continue the date of taking the depositions and by agreement of respective counsel the date was set forward to August 15, 1952.

The deposition of the plaintiff, Charles F. Coody, was taken on August 15, 1952, by agreement of the parties. This deposition discloses that the plaintiff had resided continuously in Pontotoc County for more than fifteen years and was a resident of that County at the time of his alleged injury, and at the time of the filing of his action in the Superior Court of Seminole County.

Upon answer day, September 5, 1952, defendant filed a special plea and denial of jurisdiction, setting forth that the Ada Dairy Products Company's sole place of business was in Ada, Pontotoc County; that Coody was a resident of said county and that his cause of action arose solely in said county; that Harvey J. Lambert, President and service agent of the Ada Dairy Products Company was served with summons while he attended a judicial proceeding as attorney for the defendant in the case of Jane Perry v. Casualty Reciprocal Exchange, et al.; that he was not present in Seminole County for any other purpose, except to represent his client in that proceeding then pending in the Superior Court of Seminole County. The special plea and denial of jurisdiction was overruled.

On February 2, 1953, the Ada Dairy Products Company filed its Petition for Writ of Prohibition in the Supreme Court against The Superior Court of Seminole County, State of Oklahoma, and Honorable Bob Aubrey, Judge of said Court, reciting the proceedings heretofore set forth, and accompanied with a prayer that this court issue its Writ of Prohibition directed to the said Honorable Bob Aubrey, Judge, commanding him to desist and refrain from further proceedings in the case of Charles F. Coody against the Ada Dairy Products Company for the want of jurisdiction over the person of that corporation.

The case has been elaborately briefed and we have had the further benefit of oral argument.

■ A preliminary matter for our consideration is whether the circumstances of the taking of the deposition of the witness, Coody, the plaintiff in the Seminole case, was such a proceeding as would bar the Ada Dairy Products Company from challenging the Seminole Court's jurisdiction over the defendant. In other words, did the defendant thereby enter a general appearance in the case and, if so, does it defeat the immunity here asserted? Our answer is in the negative.

Under 12 O.S.1951 § 434, either party may take depositions at any time after service of summons, and under 12 O.S.1951 § 435, the depositions may be taken before any Judge of a court, Clerk of a court, a Justice of the Peace or a Notary Public.

The respondent, the Judge of the Superior Court of Seminole County, is not vested with jurisdiction to control the taking of depositions; that right is controlled by the terms of the statute.

A like contention was presented and denied in Harris Foundation, Inc., v. District Court of Pottawatomie County, 196 Okl. 222, 163 P.2d 976, 162 A.L.R. 272. In that case a plea to the jurisdiction of the court was filed by the defendants. Both plaintiff and defendants had taken depositions in the case in support and denial of the court's jurisdiction. Upon the hearing on the question of jurisdiction, the trial court was of the opinion that by reason of the scope of evidence in the depositions taken by the defendants and those taken by the plaintiff which were participated in by the defendants, that the defendants had entered a general appearance. The Trial Judge concluded that defendants had made a general appearance and therefore denied defendants' motion to dismiss for want of jurisdiction. This court issued its writ of prohibition under art. VII, § 2 of the Constitution granting it jurisdiction to exercise a general superintending control over all inferior courts, and in its opinion stated that the issuance and service of summons upon one exempt therefrom by reason of the immunity ac-

corded by law, and the exercise by trial courts of jurisdiction predicated thereon is violative of the sovereign policy of the State in the administration of justice.

It is inconceivable that defendant be deprived of the right to challenge the court's jurisdiction and the exercise by it of judicial force not granted by law, when the record discloses the taking of the depositions was for the very purpose of establishing that want of jurisdiction.

In Commonwealth Cotton Oil Co. v. Hudson, 62 Okl. 23, 161 P. 535, 537, service was made upon a witness while attending court under a subpoena in a county other than his residence. The witness was served as the managing officer and agent of the defendant corporation. In opposition to his plea in abatement to quash the service, it was contended he waived the jurisdictional question because he had filed a motion for a more definite statement of plaintiff's petition. This court referring to its previous decisions said:

"It will be recalled that in Spaulding v. Polley [28 Okl. 764, 115 P. 864], supra, the party complained of the want of jurisdiction, tested the sufficiency of the petition by demurrer, as well as by answer, after his plea to the jurisdiction had failed, and yet, he was allowed the benefit of his plea in this court, and the cause was reversed thereon. The reason given by the courts for holding that making a defense does not waive the jurisdictional point is that, in theory at least, the defendant has been brought into court wrongfully, and is there under protest, and answers and defends himself, in a sense, under compulsion, and that, such being the case, he may do so, still preserving his rights on the point of jurisdiction. Now, if he can thus answer and defend himself, we can see no reason why he could not ask that the petition he must answer be made definite on certain points, so that he may intelligently answer. * * *"

The public policy of a Sovereign State is indicated by its Constitution, its common law, its legislative enactments and the judicial interpretations placed upon them by its courts. It is axiomatic and the books refer to cases in which courts hold, that a litigant by asserting claims or presenting matters foreign to the jurisdictional question thereby waives jurisdiction. That rule is not applicable where the court is exercising an unwarranted jurisdiction in violation of the sovereign policy of the State. Jurisdiction, or want thereof, is often obscured in that twilight zone requiring a critical examination of the record for a correct solution. We are not burdened with that responsibility or duty in the instant case for the reason that it is immaterial whether the depositions do or do not disclose a general appearance of the Ada Dairy Products Company in the Seminole case.

In the Harris Foundation case, supra [196 Okl. 222, 163 P.2d 977], we held:

"Where an inferior court is exercising unwarranted jurisdiction in violation of a sovereign policy the fact that a party litigant therein may have entered a general appearance does not prejudice the right of the state to protect the integrity of the administration of justice. The benefit to the litigant therefrom is but an incident to the exercise of power by the state, which power cannot be impaired by such appearance."

We therefore advert to the final question of whether the service of summons on Mr. Lambert, as President and service agent of the Ada Dairy Products Company vests the Seminole Court with jurisdiction. Under 12 O.S.1951 § 134, an action against a domestic corporation may be brought in the county where it has its principal place of business, or in which its principal officers may reside, or be summoned, or where the cause of action arose. As we have already noted, by formal admissions in argument, plaintiff was a resident of Pontotoc County, his cause of action wholly arose there, defendant's principal place of business and its officers were located in said county, and, therefore, without more, venue of the action is lodged in that county. Respondent contends that Section 134 specifically authorizes service of summons upon an officer of a domestic corporation wherever he may be

summoned. In support of that contention he cites the case of Badger Oil Co. v. Clay, 83 Okl. 25, 200 P. 433, 435. The court in that case construed Section 4674 of the Revised Laws of 1910, which section is identical with our present statute, 12 O.S.1951 § 134. The Badger Oil Co., a domestic corporation, maintained its principal office in Garfield County. Mr. Badger, its president, was served with summons as president of the domestic corporation while in Grady County. In the opinion it is said:

"Section 4674, R.L.1910, provides in substance that a domestic corporation may be sued in any county in which it is situated, or has its principal office or place of business, or in which any of the principal officers may reside or be served with summons. The president of this company was served with summons in Grady county. He was there voluntarily, not induced to come to Grady county by any artifice, trick, or fraud, nor was he there in attendance on court or in obeyance to any subpoena. Under the statute, the service upon the president was service upon the corporation, and, being regularly served with summons, the court had jurisdiction."

The decision in no respect is decisive of the question of whether Mr. Lambert was subject to service while in attendance upon the Seminole Court as an attorney under the circumstances here related.

Statements in the application for the writ by inference might be construed as a basis of enticement or allurement in procuring Mr. Lambert's presence in Seminole on the date service of summons was made upon him. The suggestion may be set aside, both upon the record and further upon counsel's abjurement of the fact in oral argument.

As we read the pronouncement of the courts, we find some diversity of legal thought on the question as to whether the relief is granted upon a concept of privilege or upon the broader and firmer ground of immunity.

We have heretofore in Harris Foundation, Inc., supra, adopted the latter view and held that the immunity from service applies to litigants and witnesses while attending upon the courts. This principle of law should not be strictly applied, but should extend to all situations where the ordinary administration of the courts of justice is or may be impeded.

As an illustration, under our Constitution, art. VII, § 9, the Chief Justice of this court may, by order, assign a District Judge to hold court in any judicial district within the State. Let us assume that a criminal case is transferred to another county on a change of venue, and the County Attorney accompanies the Judge of the court to the adjoining county for the purpose of prosecuting the case. No one would seriously contend that the Judge and the prosecuting attorney were subject to service of summons while in the foreign county. We do not conceive of any reason why the same consideration should not be applied to the defendant's lawyer. It has been here suggested that the principle of immunity should not be extended to a lawyer if by chance he is also the President of a domestic corporation. We find it difficult to perceive why such an invidious discrimination should apply to a lawyer who concededly is an officer of the court.

The immunity here claimed is neither unique nor novel, as freedom from suit in going to and from attendance upon the courts is a principle of law of ancient vintage. We find claims of immunity as here pressed sustained by the courts as early as in the reign of Henry VI. (1422-1461) Year Book, 20 Henry VI. 10, and infrequently denied either by State or Federal courts.

Where an attorney is actually attending court for the purpose of making a motion, if he be arrested on a Capias ad satisfaciendum he will be discharged from arrest. Humphrey v. Cumming, 5 Wend. N.Y., 90; Secor v. Bell, 18 Johns., N.Y., 52. This principle of the law is supported by the early English cases, which may be found cited in Viner's Abridgment, Vol. XVII, p. 507, et seq., and Bacon's Abridgment, 174 et seq. In Bridges v. Sheldon, C.C.D.Vt., by Wheeler, D.J., reported in 7 F. 17, in discussing the right of privilege or immunity on page 43 of the opinion states:

"The privilege to parties to judicial proceedings, as well as others required to attend upon them, of going to the place where they are held, and remaining so long as is necessary and returning wholly free from the restraint of process in other civil proceedings, has always been well settled and favorably enforced. It is mentioned in the Year Book, 20 Henry VI. 10, and enforced to protect not only the body of a suitor from arrest, but his horse and other things necessary for his journey, which would otherwise be attachable, by the custom of London, from seizure for debt." Bac.Abr. "Privileges," 4, 17, 55.

In Feister v. Hulick, D.C., 228 F. 821, 822, it is said:

"Immunity from arrest, or service of process, does not, in cases of this kind, flow from any privilege of the defendant. It is the consequence of the application of a legal principle, the benefit of which a particular defendant happens to get. The principle is founded upon a policy of the law and the recognition of a legal doctrine. It is part of the policy of the courts to brook no interference with their efforts to administer justice. * * *"

The principle of law here under consideration was sustained by this court in its earlier decision in Lonsdale Grain Co. v. Neil, 73 Okl. 221, 175 P. 823, where we said:

"Service obtained on an officer of a foreign corporation, who comes into this state to give testimony before a court in an action wherein the corporation of which he is an officer is plaintiff, is privileged from the service of a summons issued, in another action against said corporation, in the county where said officer is attending court as a witness, and service of summons, made on said officer, for the purpose of obtaining jurisdiction over the corporation of which he is an officer, under such circumstances, will upon proper motion be set aside."

In Burroughs v. Cocke & Willis, 56 Okl. 627, at page 631, 156 P. 196, at page 197, L.R.A.1916E, 1170, of the opinion it is said:

"With the exception of a few isolated cases which varied the general rule to meet specific conditions, it can safely be said that the courts of all of the states, with the exception of the above four, have uniformly held that all nonresidents, while they are attending court proceedings, either as suitors, or as witnesses, are privileged from service of summons while there upon that business."

The foregoing cases, as well as others in support of the rule, are cited in support of our decision in Harris Foundation, Inc., supra.

We are of the view and so hold that the Superior Court of Seminole County, Oklahoma, did not have jurisdiction over the person of the defendant corporation, and the attempted service upon Mr. Lambert, under the circumstances here disclosed, was a nullity. Let the writ of prohibition follow directing the Honorable Bob Aubrey, Judge of the Superior Court of Seminole County, Oklahoma, to enter an order quashing the service of summons in said cause, No. 7686, in the Superior Court of Seminole County, and he is further directed to enter an order sustaining defendant's plea to the court's jurisdiction in said proceeding.

Writ granted.

HALLEY, C. J., and WELCH, DAVISON and WILLIAMS, JJ., concur.

JOHNSON, V. C. J., and CORN, J., dissent.