Paul W. BRIGHTMIRE, individually and on behalf of thousands of other Oklahomans similarily situated, Petitioners,

v.

DISTRICT COURT OF TULSA COUNTY, State of Oklahoma, and Hon. Robert D. Simms, Respondents.

No. A–14202.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1967.

**426**

Paul W. Brightmire, Tulsa, for petitioners

Remington Rogers, Tulsa, for respondents.

PER CURIAM:

This is an original proceeding in which petitioner is requesting this Court to issue a writ of prohibition against the Honorable Robert D. Simms, district judge, and the District Court of Tulsa County. Petitioner's application for this Court to assume jurisdiction was set for hearing February 17, 1967. At that hearing petitioner represented his own cause, and the respondent was represented by Mr. Remington Rogers of Tulsa. At the conclusion of the hearing, this Court assumed jurisdiction of the matter, and set a hearing on the merits, concerning the issuance of the writ, to be had on February 20, 1967.

This proceeding arose out of a district court matter in which LeRoy Blackstock and Martha Park obtained a temporary restraining order and writ of prohibition against the Honorable John C. Barnes, Justice of the Peace in and for Tulsa County. The temporary restraining order was issued against him as an individual, and the writ of prohibition was issued against him

as Justice of the Peace. Both orders were intended to prevent the Justice of the Peace from exercising the functions of his office, temporarily at least.

Following the issuance of the district court orders, Paul W. Brightmire, "individually and on behalf of thousands of other Oklahomans similarly situated", filed his application and verified petition in this Court asking that the writ of prohibition be issued to prevent the district court from interfering with the Justice of the Peace in the lawful execution of his office.

The facts, briefly stated, are that on January 30, 1967 the Justice of the Peace issued a supoena duces tecum to Mr. LeRoy Blackstock, directing him to appear before him on February 2nd, and to bring with him all books, records and financial statements pertaining to Judicial Reform, Inc., an Oklahoma corporation, for the purpose of testifying at a deposition hearing. Mr. Blackstock is shown to be President of Judicial Reform, Inc.

On the same date, a subpoena was issued to Martha Park, directing her to appear for the purpose of testifying as a witness, at the same hearing. Both subpoenas were personally served on the parties.

When the time arrived for taking the depositions, neither witness appeared. So, the Justice of the Peace issued a writ of attachment, and directed his constable to arrest both parties and bring them to his court, to answer for contempt for failure to appear as directed. The constable arrested Mr. Blackstock and delivered him to the court. He was accompanied by his attorney at the time.

When Mr. Blackstock refused, in the presence of the Justice of the Peace, to be sworn and to testify, he was found in contempt and was ordered placed in the county jail until he should agree to be sworn and to testify. Upon petition by Mr. Blackstock, the district court granted him a writ of habeas corpus, finding that he had been denied due process of law, when he was cited and sentenced.

Subsequently, and on the premise that the deposition proceedings had been ordered continued from day to day, until completed, and on the basis of personal service of the subpoena duces tecum, the Justice of the Peace issued a second writ of attachment on February 8th, and the constable arrested Mr. Blackstock a second time, and delivered him to the court. At this appearance, the Justice of the Peace attempted to follow the guidelines laid down by the District Court as the result of the habeas corpus proceedings.

The Justice of the Peace again directed the witness, Mr. Blackstock, to be sworn and to testify, and again the witness through his attorney, refused. At that point the Judge informed the witness that unless he did comply with his order, he would find him in contempt; and when the witness persisted in his refusal, the Judge informed him that he was in contempt of court, and asked him if he had any legal reason to give why he should not be found in contempt, and thereafter be sentenced.

The witness did not give any reason for not being found in contempt, but instead requested a continuance, for the purpose of obtaining a writ of prohibition in the district court to prevent the Justice of the Peace from acting. It being the position of counsel, that the Justice of the Peace had no authority by law to take such deposition, and because he had no commission from the Secretary of State authorizing him to serve in that capacity. The requested continuance was granted, and the witness filed his petition seeking the writ of prohibition.

On the basis of the petition, the district court issued the temporary restraining order, and the writ of prohibition against the Justice of the Peace, and set a hearing to be had on February 17, at which time the Justice of the Peace was to show cause "why he should not be absolutely restrained from any further proceedings in the mat-

ter". Thereafter, the petition was filed in this Court on February 13, 1967. This Court issued an alternative writ of prohibition, and stayed any further proceedings in the district court until the further order of this Court.

Having assumed jurisdiction of this matter, we need not go into the question, whether or not the contempt is direct criminal contempt. We found that it was, and therefore assumed jurisdiction of the matter. Consequently, there is but one basic question which must be answered: Does the District Court of Tulsa County possess authority, under law, to issue either a restraining order, or a writ of prohibition to prevent Justice of the Peace John C. Barnes from executing the functions of his office, under these circumstances?

It appears that the parties seeking to take the depositions are attempting to proceed under the provisions of Title 75 Okl.St.Ann. § 315, known as the "Administrative Procedures Act, passed by the 1963 Legislature. We must, therefore consider the notice of publication provided by the Secretary of State on December 1, 1966, which recites:

"LeRoy Blackstock, et al, on behalf of Judicial Reform, Inc., filed in this office the original petition on State Question No. 441, Initiative Petition No. 218, which petition is on file in the office of the Secretary of State of Oklahoma, where it is subject to public inspection."

As the result of the notice, certain protests were filed and a hearing was held by the Secretary of State on December 21, 1966. At the conclusion of that hearing, the Secretary issued the following order:

"It will be my order that a reasonable time be given the protestants to check said petitions in all respects and that seventy-eight (78) days seems a reasonable time, therefore, Thursday March 9, 1967, at 10:00 o'clock A.M. in the Conference Room on the Second floor of the State Capitol, Oklahoma City, Oklahoma,

is fixed as the time and place for further hearing in this matter, at which time a progress report is to be given. Consideration of additional time or other requests may be considered."

The only purpose for issuing such an order was to serve notice on all interested parties when and where the next hearing, on the question, would be held. It must therefore be construed that such notice met the requirements of Title 12 Okl.St. Ann. § 434, which provides:

"Either party may commence taking testimony by deposition at any time after service of summons upon the defendant."

Subsequent to the hearing on December 21st, petitioner served his notice to take depositions, and the Justice of the Peace issued his subpoenas, directing the witnesses to appear for the purpose of testifying at the deposition hearing. It is presumed, that petitioner is seeking evidence to present at the Secretary of State's hearing, to be had on March 9th.

Considering the Administrative Procedures Act, under which petitioner is attempting to proceed, Title 75 Okl.St.Ann. § 315, provides in part as follows:

"The agency conducting any proceeding subject to this Act shall have power to require the furnishing of such information, the attendance of such witnesses, and the production of such books, records, papers or other objects as may be necessary and proper for the purpose of the proceeding."

Clearly, this portion of the section provides the Agency, as such, with the power of subpoena duces tecum. However, the section continues with the following additional provision:

"*The Agency, or any party to a proceeding before it,* may take the depositions of witnesses, within or without the State, *in the same manner as is provided by law for the taking of depositions*

*in civil actions* in courts of record. Depositions so taken *shall be* admissible in any proceeding affected by this Act." (Emphasis added).

█ No other interpretation can be given the above language other than, any party to such a proceeding may resort to the civil procedures to take depositions, in order to obtain evidence to present at a hearing conducted under that Act. The language is so worded that such depositions *shall be admissible,* subject to proper objections, offered at the hearing.

█ To determine who may be authorized to conduct deposition hearings, we refer to Title 12 Okl.St.Ann. § 435, which provides:

"Depositions may be taken in this State before a judge or clerk of a court of record, before a county clerk, *justice of the peace,* notary public, or before a master commissioner, or any person empowered by a special commission; but depositions taken in this State, to be used herein, must be taken by an officer or person whose authority is derived within the State." (Emphasis added).

We must therefore conclude that the Justice of the Peace is one authorized to take depositions, and this position is sustained by the Oklahoma Supreme Court in: Ada Dairy Products Co. v. Superior Court, Okl., 258 P.2d 939, 941. It appears, therefore, that the parties seeking to take the depositions are properly before an officer so empowered.

When we consider further the civil procedures, to which the Administrative Procedures Act refers, we find the following three sections, which clearly provide: one who refuses to testify or subscribe a deposition may be punished for contempt; authority for the officer to issue a writ of attachment; and provides the punishment which may be imposed for such contempt. Those sections of the statutes provide:

Title 12 Okl.St.Ann. § 392:

"Disobedience of a subpoena, or refusal to be sworn or to answer as a witness, or to subscribe a deposition, when lawfully ordered, may be punished as a contempt of the court or officer by whom his attendance or testimony is required."

Title 12 Okl.St.Ann. § 393, provides:

"When a witness fails to attend in obedience to a subpoena * * *, the court or officer before whom his attendance is required *may issue an attachment* to the sheriff, coroner or constable of the county, commanding him to arrest and bring the person therein named before the court or officer, at a time and place to be fixed in the attachment, to give his testimony and answer for the contempt." (Emphasis added).

Title 12 Okl.St.Ann. § 394 recites, in part:

" * * * In other cases, the court or officer may fine the witness in a sum not exceeding fifty dollars, *or may imprison him in the county jail, there to remain until he shall submit to be sworn, testify or give his deposition."* (Emphasis added)

█ In face of these statutes, we can see little room for argument, that one cannot be found in contempt of court, and be sentenced therefor, for refusal to testify at a deposition hearing. For the same reason, we can see absolutely no justification in the witness' position, that the Justice of the Peace is not a judicial officer. It is of no consequence, whether or not he personally feels that the Justice of the Peace court is not a dignified forum, the fact is that the court was created by the Oklahoma Constitution in Article 7, section 18, which recites:

"The office of Justice of the Peace is hereby created, and until otherwise provided by law, *Courts of Justices of the Peace* shall have, co-extensive with the county, jurisdiction as examining and committing magistrates in all felony cases, and shall have jurisdiction, concurrent with the County Court in civil cases where the amount involved does not exceed two hundred dollars, * * *." (Emphasis added)

Therefore, having concluded that the Justice of the Peace is a judicial officer, that he was clearly acting within statutory authority when he issued the subpoenas, writs of attachment, and directed the witness to be sworn to testify, prior to issuance of his citation, we have the question left to answer: Does the district court possess authority to issue a writ of prohibition against an inferior court? And, while providing the answer to that question, there must be a secondary question: Should the district court issue the writ of prohibition and restraining order in this particular case?

The answer to the first question must be: Yes, the district court does possess authority to issue a writ of prohibition against an inferior court. However, such writ should only issue when the inferior court is clearly exercising powers not granted to it. The first paragraph of the syllabus in State ex rel. Caldwell v. Vaughn, 33 Okl. 384, 125 P. 899, states the following:

"The district and superior courts of the state have power to issue writs of prohibition to inferior courts and bodies exercising judicial power *to restrain them from exercising powers not granted to them.*" (Emphasis added).

We have already determined that the Justice of the Peace was clearly acting within his statutory authority; therefore, it cannot be inferred that he was exercising powers not granted him, in an attempt to justify issuance of the writ of prohibition by the district court. We accept the statement of the Supreme Court recited in Ada Dairy Products Co. v. Superior Court, supra:

"The respondent, the Judge of the Superior Court * * * is not vested with jurisdiction to control the taking of depositions; that right is controlled by the terms of the statute."

And insofar as the Justice of the Peace was acting within his statutory authority, and had jurisdiction of the person and the subject matter, the district court restraining order against him, as an individual, would be unauthorized. The second paragraph of the syllabus in Waugh v. Dibbens et al., 61 Okl. 221, 160 P. 589, L. R.A.1917B, 360, recites:

"An action will not lie against a judicial officer for a judicial act, where there is jurisdiction of the person and the subject-matter, although it be alleged and proved that such act was done maliciously, or even corruptly."

We are also of the opinion that the statutes provide sufficient remedy for anyone cited for contempt to preclude the district court from entertaining jurisdiction to issue writ, as in this case. It is quite clear that anyone cited for contempt has available the writ of habeas corpus, for imprisonment; and even before the imprisonment takes place, he has the right of appeal, to raise the question of due process.

Therefore, notwithstanding the fact that the district court possesses authority to issue a writ of prohibition in proper cases, we must look to the facts and circumstances of this particular case, in order to answer the secondary question.

Time is of the essence to the protestants, who have attempted to comply with the statutes in an effort to obtain evidence pertaining to the March 9th hearing. And that hearing concerns matters of general public interests, which should receive the benefits of a full hearing of all matters bearing upon it. Therefore, if the statutes have been properly followed to establish the deposition hearing, a question which we are not called upon at this time to answer, since it is one reviewable on appeal, then the witness should be sworn and should testify; and if the witness continues his refusal, without proper reason, then the Justice of the Peace is authorized to, and should, cite him for contempt, and imprison him, as provided by statute. The citation for contempt has not yet been made, since the Justice of the Peace was prohibited from doing so by the district court.

The transcript of the February 8th hearing before the Justice of the Peace reveals.

that counsel argued that the Justice of the Peace must have a commission from the Secretary of State to conduct such a deposition hearing. At one point in his argument, he referred to the Administrative Procedures Act as authority for his position. We fail to find any such provision in that Act. Instead, we find that it merely refers to the civil procedures governing procedure for taking depositions, as hereinbefore set forth. We can only presume witness' counsel had in mind that clause in Title 12 Okl. St.Ann. § 435, wherein it sets forth who may take a deposition, which reads: " * * or any person empowered by a special commission; * * *." If such presumption is correct, we should point out that such is in addition to those officers listed as being qualified to take depositions.

That same transcript reveals further, that the witness indicated that his objection to giving his testimony before the Justice of the Peace was, that his court is not a court of record; and stated further, that he would give his testimony before any court of record, or a district judge. In face of the statutes, his position is untenable.

We are of the opinion the law is quite clear in this matter, and we can see no justifiable reason why this witness should be permitted to avoid proper judicial process, any more so than anyone else. To permit anyone, and especially a member of the bar, to intentionally and wilfully refuse compliance with the law, would be permitting a special group of persons to enjoy exceptions to the requirements of the law. The law knows no such distinctions.

We are of the opinion, that under the circumstances of this case, the writ of prohibition against the Honorable Robert D. Simms, and the District Court of Tulsa County should be, and the same is therefore, granted; thus answering the secondary question. The district court is therefore instructed to dismiss the temporary restraining order, and the writ of prohibition heretofore issued in district court case No. 114,133.

Writ granted.